UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════
PENNY T. COLLINS,

                        Plaintiff,


v.                                          5:07-CV- 00493 (NPM/DEP)


THE STATE OF NEW YORK,
NEW YORK STATE DEPARTMENT
OF CORRECTIONAL SERVICES, BRIAN
FISCHER, AS COMMISSIONER OF THE
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, GLENN S.
GOORD, INDIVIDUALLY AND AS
FORMER COMMISSIONER OF THE
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, JOHN BURGE,
 INDIVIDUALLY AND AS SUPERINTENDENT
OF AUBURN CORRECTIONAL FACILITY,
HAROLD GRAHAM, INDIVIDUALLY AND
 AS SUPERINTENDENT OF AUBURN CORRECTIONAL
FACILITY, TROY MITCHELL, INDIVIDUALLY
AND AS A CORRECTIONS OFFICER,

                        Defendants.
--------------------------------------------------------------------------------------------------
APPEARANCES:                        OF COUNSEL:

Office of Mairead E. Connor          Mairead E. Connor, Esq.
Attorney for Plaintiff
440 South Warren Street, Suite 703
Syracuse, NY 13202


Office of N.Y. State Attorney General    Maria Moran, Esq.
Attorneys for Defendants             Timothy P. Mulvey, Esq.
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

NEAL P. McCURN, Senior District Court Judge

## **MEMORANDUM - DECISION AND ORDER**

This is action brought by the plaintiff, Penny Collins ("plaintiff") against the State of New York ("State"), New York State Department of Correctional Services ("DOCS"), Brian Fischer ("Fischer"), as commissioner of DOCS, Glenn S. Goord ("Goord"), individually and as former commissioner of DOCS, John Burge ("Burge"), individually and as superintendent of the Auburn Correctional Facility ("Auburn"), Harold Graham ("Graham"), individually and  as superintendent of Auburn, and Troy Mitchell ("Mitchell"), individually and as a corrections officer, (collectively, "defendants") for gender based discrimination, hostile work environment, disparate treatment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq., 42 U.S.C. §1983, and §296 of the New York State Executive Law.  Specifically, in her first, second, third and fourth causes of action, plaintiff alleges discrimination, hostile work environment, disparate treatment and retaliation pursuant to Title VII and the New York State Human Rights Law ("HRL"), codified at Section 296 of the New York State Executive Law.  The fifth cause of action alleges aiding and abetting pursuant to the HRL, and plaintiff's sixth cause of action alleges discrimination and hostile work environment pursuant to 42 U.S.C. §1983.

2

The court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, and venue is proper in the Northern District of New York pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims alleged by plaintiff occurred in the district.

Currently before the court is defendants' motion for summary judgment (Doc. No. 69) and plaintiff's motion to strike certain facts (Doc. No. 78) from defendants' statement of material facts submitted in support of their summary judgement motion.  For the reasons set forth below, plaintiff's motion to strike is granted, but in the interest of judicial economy, the court will reach the merits of the defendants' motion for summary judgment.  Defendants' motion for summary judgment is denied in its entirety.

I.      FACTS and PROCEDURAL HISTORY

The following facts are taken from the amended complaint (Doc. No. 54) and from the record.  The statement of material facts not in dispute submitted by the defendants without regard for the Local Rules will be discussed below, and is of little or no use to the court in setting forth the facts of this case.

Plaintiff has been  a corrections officer ("CO") for DOCS, an agency of the State of New York, since 2002.  While at the Academy for Corrections Officers ("Academy"), plaintiff was given a book entitled "Orientation Handbook for

Female Staff Working In Corrections."  The handbook allegedly promoted a sex-based stereotype, including "stereotypes of females as those who gossip, are jealous and backbiting, spread rumors and should take breaks to eat ice cream.  It encourages women to limit the time they voluntarily work ... because they 'have primary responsibility for the ca[r]e of their offspring.'" Doc.No. 77-16 at p. 18.

Plaintiff's first assignment after graduating from the Academy was at the Sing Sing Correctional Facility ("Sing Sing"), where she allegedly suffered her first incident of sexual harassment.  A supervisor allegedly put his hand on her inner thigh and stated that he would "hook up with her before she left." Doc. No. 54, ¶ 15.  In May of 2003, plaintiff transferred to Sullivan Correctional Facility ("Sullivan").  During the thirteen months plaintiff worked at Sullivan, she allegedly experienced several incidents of sexual harassment.  The superintendent of Sullivan, James J. Walsh ("Walsh"), encouraged plaintiff to file a formal complaint of harassment.  Upon investigation of plaintiff's complaint, findings were made confirming plaintiff's claims, but no meaningful action was taken on the alleged basis that plaintiff's harassers could not be identified.

Plaintiff applied for a transfer to Auburn to be closer to her home and family.  In late June of 2004, plaintiff learned she had received the transfer to Auburn, but when her co-workers learned of this transfer, several allegedly

4

warned her that Auburn was no place for a woman to work.  Plaintiff states she
had previously heard similar comments about Auburn at the Academy and at Sing
Sing.  On June 28, 2004, plaintiff began work at Auburn, where she alleges that a
certain CO from Sullivan had called Auburn, falsely stating that plaintiff was an
administrative transfer, and plaintiff immediately faced harassment and retaliation
from her co-workers and supervisors.  Plaintiff alleges that the harassment and
discrimination continued through 2004 - 2005 and grew worse over time.  In June
of 2005, the allegedly violent and hostile behavior of one of her supervisors
frightened plaintiff enough to discuss the matter with Auburn Superintendent John
Burge ("Burge").  Despite this discussion and plaintiff's filing of a grievance,
plaintiff asserts that no action was ever taken by DOCS.

In October of 2005, plaintiff filed a formal complaint of discrimination and
retaliation with DOCS, which was acknowledged by letter from the Office of
Diversity Management ("ODM") of DOCS on October 11, 2005.  While awaiting
action on her complaint, in October of 2005 plaintiff approached the new Auburn
superintendent, Harold Graham ("Graham"), and asked about the status of her
complaint.  Plaintiff alleges that Graham was short and curt with her, and informed
her that nothing would happen with her complaint anyway.  Plaintiff alleges that
Graham told her that if she wanted action on her complaint, she should commence

5

a lawsuit in federal court.  Plaintiff alleges that she experienced extreme

harassment and discrimination over the next several weeks, and recites several

inappropriate remarks and actions allegedly inflicted upon her by CO Mitchell.[1]

On November 29, 2005, plaintiff met with Mary Mayville, a representative

from ODM, the meeting resultant of plaintiff's earlier October 2005 complaint.

Plaintiff alleges that Mayville told her that Auburn has historically had a problem

with harassment of females.  Plaintiff states that no actions were taken by DOCS

in regard to the October 2005 complaint.  In December of 2005, plaintiff began to

see a counselor regarding the harassment, discrimination and retaliation she

allegedly experienced at Auburn.  On December 7, 2005, plaintiff took an

extended sick leave from her position at Auburn.  On January 6, 2006, plaintiff

filed a formal complaint against the defendants with the New York State Division

of Human Rights ("DHR"), alleging gender based discrimination and retaliation.

While out on leave, but preparing to return to work, plaintiff asserts that she

felt compelled to seek a transfer to get away from defendant Mitchell and other co-

workers and supervisors that were allegedly harassing her at Auburn.  In March of

2006, plaintiff returned to work and was transferred to the Eastern Correctional

---

[1]      The court deems it unnecessary at this juncture in the case to recount the instances of vulgar language attributed to Mitchell throughout the deposition testimony.

Facility ("Eastern") in Napanoch, New York, which is over 150 miles from her residence.  Due to the distance from her primary home, plaintiff needed to rent a second residence in the Napanoch area.  Six months after her arrival at Eastern, plaintiff learned that DOCS had transferred Mitchell to Eastern.

Plaintiff alleges that she feared Mitchell, who continued his harassment of her at Eastern by, e.g., intentionally blocking her exit one day from work by sitting in a chair with his feet up across the gate, forcing her to leave through the visiting room.  In addition, Mitchell allegedly came to plaintiff's work area for no reason, stood at the gate and watched her.  Plaintiff alleges that she was required to take another extended leave due to the continued stress she suffered as a result of Mitchell's transfer and harassment, and the continuing discrimination at DOCS.

In August of 2006, plaintiff alleges that after concluding its investigation, DHR determined that there was probable cause to believe that DOCS and Mitchell, as an aider and abettor, subjected plaintiff to unlawful sexual harassment and retaliation.  The DHR also concluded that DOCS had failed to properly investigate and respond to plaintiff's complaints.  On February 14, 2007, counsel for plaintiff made a request to DHR   to dismiss plaintiff's complaint for administrative convenience, to allow plaintiff the opportunity to commence this proceeding in federal court.

7

II.      DISCUSSION

A.      Motion To Strike

At the time the motion for summary judgment was filed in the current

action, Local Rule 7.1(a)(3) stated in pertinent part that

> Any motion for summary judgment shall contain a Statement of
> Material Facts. The Statement of Material Facts shall set forth, in
> numbered paragraphs, each material fact about which the moving
> party contends there exists no genuine issue. Each fact listed shall set
> forth a specific citation to the record where the fact is established.
> The record for purposes of the Statement of Material Facts includes
> the pleadings, depositions, answers to interrogatories, admissions and
> affidavits. It does not, however, include attorney's affidavits. <u>Failure
> of the moving party to submit an accurate and complete Statement of
> Material Facts shall result in a denial of the motion</u>....
>
> The opposing party shall file a response to the Statement of Material
> Facts. The non-movant's response shall mirror the movant's
> Statement of Material Facts by admitting and/or denying each of the
> movant's assertions in matching numbered paragraphs. Each denial shall set
> forth a specific citation to the record where the factual issue arises. The
> non-movant's response may also set forth any additional material facts that
> the non-movant contends are in dispute in separately numbered paragraphs.
> <u>The Court shall deem admitted any facts set forth in the Statement of
> Material Facts that the opposing party does not specifically controvert</u>.

N.D.N.Y. L.R. 7.1(a)(3)  (emphasis in original) (2009).

The purpose of filing a statement of material facts not in dispute is to

facilitate the evaluation of the relevant evidence for the court.  A widely used

analogy used to explain this process, and quoted by the plaintiff in this case as

well, states that "[j]udges are not like pigs, hunting for truffles buried in briefs."
United States v. Dunkel, 927 F.2d 955 (7th Cir. 1991).   In this case, defendants
submit a statement of material facts (Doc. No. 69, filed under seal) with thirty-six
numbered facts.  Of these, eighteen of the purported facts submitted by the
defendants had no citations whatsoever.  The remaining eighteen facts either (1)
only partially cited to the submitted facts, (2) cited generally to a certain
document, or (3) a combination of the two.  Unfortunately, counsel for plaintiff
was relegated to searching for truffles, not only to support her own recitation of
material facts in dispute, but to provide the citations to defendants' facts which
they then relied upon for their reply.  In addition, the court read defendants'
statement of material facts immediately upon completion of a careful reading of all
the depositions in this matter, and found a number of inaccuracies, unsupported
claims and argument among defendants' rendition of the facts.  Plaintiff argues,
and the court concurs, that "[t]he failure of Defendants to make specific citations
to the record causes the Plaintiff and the Court to hunt and peck through hundreds
of pages of depositions and documents for alleged support of Defendants'
propositions and to search through countless documents looking for the record
evidence of the alleged fact." Doc. No. 77-16 at p. 9.

   In the case at bar, it is unfortunate that the court did not review defendants'

9

statement of material facts when submitted, at which point the motion could have been denied with leave to refile, thus saving counsel for the plaintiff a great deal of time and angst caused by being forced to search through the extended record, seeking out the words and phrases defendants submitted but did not cite.  The court notes that while plaintiff requested only five additional days to file her cross motion to strike, with an extensive, detailed and <u>accurately cited</u> response to the defendants' submission, defendants requested and were given two extensions of time to file their reply to the statement of material facts due on December 9, 2009. Even with the benefit of plaintiff's extensive citation to the record, defendants did not file their reply papers until January 15, 2010.

As this court stated in <u>Goodman v. Albany Transport, Inc.,</u> 103 F.Supp.2d 112, 116 (N.D.N.Y. 2000),

> A movant's statement of material facts must be readily identifiable. The non-movant is required to respond to that submission, and if he fails to controvert the facts that the movant has set forth, the Court will deem those facts admitted as uncontroverted for the purpose of the motion. (For that reason, as well, specific citations to the record are crucial.) It would be an abuse of discretion for this Court to accept as statements of material fact the submissions that Defendant's counsel "assumed" would satisfy L.R. 7.1(f) (1997); the Court simply must not accept practices that would place non-movants in the position of hunting for the elusive statement of material facts, and guessing and hoping that they were zeroing in on the right submission. Accordingly, the Court finds that Defendant [] did not set forth a statement of material facts in compliance with the Local Rules

10

prior to the time Plaintiff was required to serve his response to [Defendant's] summary judgment motion....

These motion papers were filed over two years ago. Ideally, the Court would have detected this procedural defect shortly thereafter, and ordered the parties to refile with a minimal waste of time. The Court sincerely regrets the long delay in reviewing the submissions and issuing this order, a delay that becomes, essentially, lost time for all parties. The Court's regret is accentuated by the apparent seriousness of [Plaintiff's] illness, and its awareness of the special need for the expeditious resolution of actions involving claims of serious personal illness.

Unfortunately, the Court's great administrative backlog ... prevented the Court from reviewing the submissions earlier in sufficient detail to detect these problems. In light of these circumstances, and in view of the ... urging by counsel for the Movant [], that the Court exercise its discretion in this matter, the Court will not insist on strict compliance and will instead reach the merits of this motion.

After a careful review and consideration of the record in these proceedings, of all pleadings, the submissions of all parties, and a review of the applicable law, the Court finds that there are genuine issues of material fact that warrant a trial. Accordingly, the Court will DENY Defendant['s] ... motion for summary judgment.

Goodman v. Albany Transport, Inc., 103 F.Supp.2d at 116.

The case is quoted extensively here because this court is in a similar position as was the Goodman court inasmuch as the motion for summary judgment was filed almost two years ago. Defendants' statement of material facts should have been stricken by the court at that time for failure to comply with the Local Rules. As stated above, defendants attempted to rectify their errors of omission in

the original statement of material facts by filing a reply to plaintiff's response to same, but only succeeded in compounding the error, by causing the court to read the papers for yet a third time.  The end product is a statement of 320 mostly contested material facts contained in an unwieldy document totaling 134 pages. This fact alone is indicative that there are several genuine issues of material fact precluding summary judgment in this action.  Plaintiff argues that defendants have so flagrantly failed to comply with the Local Rule requiring specific citations that plaintiff requests that each one of the offending statements be stricken by the court.  Plaintiff also requests that the unauthenticated exhibits be stricken as inadmissable hearsay.  It is within the court's discretion to do so, and dismissing defendants' motion for summary judgment on this basis alone is warranted. However, as in the <u>Goodman</u> case set forth above, having failed to strike the noncomplying document when it was first submitted, the court will shoulder some of the responsibility.  In its discretion, the court strikes defendants' statement of material facts in dispute as it should have when it was submitted.  However, in the interest of judicial economy, and to move this case toward trial, the court will reach the merits of this motion, disregarding defendants' statement of material facts in dispute, and relying on the plaintiff's complaint and the court's own thorough review of the extensive record in this case.

B.      Motion for Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]"  See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002),

(citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

Defendants ask the court to grant summary judgment in their favor on six grounds.  First, defendants argue that New York State is not plaintiff's employer, so claims against the state must be dismissed as a matter of law.  Defendants also argue that the individual defendants are not personally liable in Title VII actions.

"Claims for damages against New York State, any arm of the state, and state officials in their official capacity (which are in effect claims against the state), are, in general, barred by the Eleventh Amendment." Brown v. New York State Department of Correctional Services, 583 F.Supp.2d 404, 413 (W.D.N.Y. 2008). "That rule does not apply to claims brought under Title VII, however. The Supreme Court has held that Congress, by amending Title VII in 1972 to include state and local governments as 'employers,' expressed a clear intention to abrogate the states' Eleventh Amendment immunity from suit under Title VII ...." Id., citing Fitzpatrick v. Bitzer, 427 U.S. 445, 449 n. 2, 96 S.Ct. 2666 (1976).  "Therefore, as the Second Circuit has noted, 'a state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity' in Title

14

VII actions." <u>Brown</u>, 583 F. Supp.2d at 413 (internal quotations omitted).

In <u>Hawkins v. County of Oneida, NY</u>, 497 F.Supp.2d 362 (N.D.N.Y. 2007), the court stated that "plaintiff asserts Title VII claims against the County and the Sheriff's Department - which, to be sure, are both 'employers' under Title VII - as well as individual defendants ... in their individual and official capacities. It is well-established that individuals cannot be held personally liable under Title VII. See <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1313-14 (2d Cir.1995). Whether individuals can be named as defendants and held liable in their official capacities as agents of an employer is a separate question." <u>Id.</u> at 370. The court presented a comprehensive explanation for assessing liability in an official capacity:

> [I]ndividuals can be named as defendants and held liable in their official capacities as agents of an employer under Title VII. It is not anomalous to permit individuals to be named as defendants, even though no judgment can be collected from them ... Both tangible and intangible benefits accrue to plaintiffs who name individual wrongdoers as defendants. The Federal Rules of Civil Procedure ("Rules"), for example, facilitate discovery against parties by requiring them to produce on notice relevant documents in their possession, whereas documents possessed by non-parties must be obtained by subpoena ... As is apparent from the Rules, the same is true for depositions; a party can be deposed on notice, whereas the deposition of a non-party witness may have to be compelled by subpoena ... Moreover, if only employers could be named as Title VII defendants, those employees who allegedly committed discriminatory acts would escape public accountability, while those who played no part in the purported discrimination are unnecessarily stigmatized. In this respect, an employer-only approach is both under-inclusive and

> over-inclusive. By contrast, naming individuals as defendants
> identifies the alleged wrongdoers, forcing them to answer for their
> acts publicly, even if they do not have to answer for them financially.
> If they are vindicated, their names are cleared.

Hawkins v. County of Oneida, NY, 497 F.Supp. 2d at 370-71 (internal citations and quotations omitted).

Accordingly, at this juncture, the court will not dismiss claims against the State of New York as a matter of law, finding that both the State and DOCS meet the criteria for employers under Title VII.[2]  Although the individual defendants may not be held personally liable in a Title VII action, they remain liable in their official capacities.

Defendants next assert that plaintiff's Title VII claims prior to March 10, 2005 are barred by the 300 day statute of limitations in New York.  Plaintiff argues that since the cases cited for that proposition were decided by the courts, the Supreme Court squarely addressed this issue in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002).  The Court stated that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct ... The 'unlawful employment practice' therefore

---

[2]     42 U.S.C.A. § 2000e(b) states in pertinent part that "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ..." (West 2011).

cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 116-17. "The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117. "Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. Consequently, this court finds that plaintiff's Title VII claims are not barred by the 300 day

17

limitations period.

Defendants next argue that no special consideration should be given to plaintiff pursuant to Title VII as an "eggshell skull" plaintiff, arguing that plaintiff is emotionally fragile or has an underlying mental illness. Plaintiff counters that defendants have produced no medical evidence that plaintiff is thin-skinned or seeking some special protection as a thin-skinned employee.  Plaintiff argues that defendants seek to use the psychological damages caused by their own conduct as a reason plaintiff should not be able to proceed with a hostile environment case.

Plaintiff cites <u>Raia v. Illinois Tool Works</u>, 2007 WL 4565139 (E.D.N.Y. 2007) for the premise that the court rejected a similar argument in a motion for summary judgment. In <u>Raia</u>, the court wrote that "Defendant contends that Plaintiff 'is truly the hypersensitive and idiosyncratic plaintiff' and that his 'reality is completely distorted by his unjustified belief that [Defendant] and its employees are out to harm him' ... In this regard, Defendant points out the undisputed fact that in 1999, Plaintiff was diagnosed with depression, panic disorder, and anxiety'...Defendant's arguments about Plaintiff's mental state raise issues of credibility which only a jury may resolve. This is especially true here given Defendant's slanted presentation of the evidence." <u>Id.</u> at * 6.  Accordingly, the court finds defendants' "eggshell plaintiff" argument inappropriate for a summary

18

judgment motion, and a matter for the trier of fact.

Defendants next state that plaintiff's discrimination, hostile environment, disparate treatment and retaliation claims pursuant to Title VII fail on the merits. The plaintiff sets forth a lengthy rebuttal of this argument and methodically addresses each element of every claim, and explains how she meets each element. As stated above, while the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[3]  The plaintiff has done so, and the court finds that reasonable minds could differ as to the import of the evidence.[4]  The merits of these claims will now go to the trier of fact, i.e., the jury.  Accordingly, defendants motion on this issue is denied.

Defendants also argue that plaintiff's HRL claims must be dismissed as barred by the Eleventh Amendment and barred by her administrative complaint to the DHR.  Defendants assert that Executive Law § 297(9) deprives federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed in an administrative form.  Defendants state that in any event, the HRL claims should be

---

[3]      Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002).

[4]      Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

dismissed as pendant claims, as "[d]ismissal of state law claims is the recommended procedure in cases where the federal claims are dismissed prior to trial." Doc. No. 69 at p. 24.

"[Section] 297(9) of the HRL provides that "any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction.' That right is waived, however, if the claimant files a complaint with any state or local human rights commission, unless: (1) the agency has dismissed the complaint for administrative convenience; (2) there is untimeliness on the part of the agency; or (3) the claimant's election of an administrative remedy is annulled." Brown, 583 F.Supp.2d at 414 (emphasis added). In the case at bar, plaintiff avers that she made a request to the DHR to dismiss her complaint for administrative convenience. Accordingly, plaintiff's claim falls under the exception to § 297(9) and is not barred.

Finally, defendants argue that plaintiff's claims pursuant to 42 U.S.C. §1983 cannot be maintained. Defendants assert that plaintiff has not established sufficient personal involvement in alleged constitutional violations by defendants Burge and Graham, nor has she established disparate treatment by defendant Mitchell.

"[A] section 1983 claim alleging discrimination in violation of a person's

right to equal protection may be brought against an individual, and Title VII law is utilized to evaluate such claims. Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir.2006). Thus, although [plaintiff's] Title VII claims against [defendant] have been dismissed, Title VII law is used to evaluate her claims brought under the NYHRL and section 1983." Kercado-Clymer v. City of Amsterdam, 370 Fed.Appx. 238, 242 (2d Cir. 2010).

Plaintiff argues that she has "adduced a plethora of evidence against the individual defendants so that there are numerous issues of material facts in dispute." Doc. No. 77-16 at p. 28. Plaintiff states that as for Burge, Graham and Goord, the evidence demonstrates that she complained to them repeatedly, orally and in writing, about her harassment, and there is a factual dispute about whether they failed to stop the harassment or make reasonable efforts to stop it. Id. at p. 30.

Plaintiff has also has "alleged numerous instances in which defendant Mitchell was personally involved in [p]laintiff's sexual harassment and retaliation," supplying an abundance of issues of fact for a jury. Id. At a minimum, without recounting here the vulgar language and improper actions attributed to Mitchell, there is a genuine issue of material fact for the jury to determine if this language and behavior was directed at plaintiff due to her gender or whether Mitchell's alleged ongoing vulgarities were inflicted upon male and

21

female alike.  In addition, Mitchell's alleged intimidation of plaintiff at Eastern is also an issue of fact for the trier of fact.  The court denies summary judgment on this issue.

## III.   Conclusion

For the reasons set forth above, plaintiff's motion to strike defendants' statement of material facts (Doc. No. 78) is hereby GRANTED, but in the interest of judicial economy, the court considers defendants' motion for summary judgment on the merits.  Defendants' motion for summary judgment (Doc. No. 69) is denied.  The court instructs the parties to contact the courtroom deputy at their earliest convenience to schedule this matter for trial.

SO ORDERED.

August 30, 2011

_____
Neal P. McCurn
Senior  U.S. District Judge